**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAUREN BAKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **WORLD CLASS DISTRIBUTION,** | ) | <u>**Jury Trial Requested**</u> |
| **INC., and HR METRICS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>COMPLAINT</u>

Plaintiff, LAUREN BAKER, by and through his counsel, Lisa Kane of Lisa Kane & Associates, and complaining of Defendants, WORLD CLASS DISTRIBUTION, INC., and HR METRICS, INC., states as follows:

### PRELIMINARY STATEMENT

1.      This is an action seeking redress for the violation of rights guaranteed to Plaintiff by 42 U.S.C. § 1981. Plaintiff seeks mandatory injunctive relief and damages to redress Defendants' discriminatory employment practices.

### JURISDICTIONAL STATEMENT

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection and redress deprivation of rights secured by 42 U.S.C. § 1981. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### VENUE

3.      Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

1

## PARTIES

4.      Plaintiff, Lauren Baker (hereinafter "Plaintiff" or "Baker"), is an African-American citizen of the United States who resides in Illinois.

5.      Defendant, World Class Distribution, Inc., hereinafter a/k/a Trader Joe's Warehouse (hereinafter "World Class Distribution"), is a foreign corporation, doing business in Illinois, which has continuously, and does now employ more than fifteen (15) employees.  Defendant, World Class Distribution, Inc., is engaged in an industry that affects commerce and is an employer for the purposes of 42 U.S.C. § 2000e *et seq*.

6.      Defendant, HR Metrics, Inc., (hereinafter "HR Metrics"), is a foreign corporation which has at all times relevant hereto, conducted, and continues to conduct, business in the State of Illinois. Defendant has continuously, and does now employ more than fifteen (15) employees. Defendant, HR Metrics, Inc., is engaged in an industry that affects commerce and is an employer for the purposes of 42 U.S.C. § 2000e *et seq*.

## COMMON ALLEGATIONS

7.      During all relevant times, Defendant, HR Metrics, has been a temporary staffing agency, which provides temporary staff to Defendant, World Class Distribution, at its Minooka, Illinois warehouse location.

8.      HR Metrics provides advertisement, employment screening services, background investigations, the selection of suitable candidates, the handling of human resources related issues, and timekeeping functions to World Class Distribution.

9.      HR Metrics issues paychecks and makes deposits of payroll taxes for employees assigned to work at World Class Distribution.

2

10.     Defendants contract for HR Metrics to provide employees to work in the Minooka, Illinois warehouse facility of World Class Distribution.

11.     Defendants, World Class Distribution and HR Metrics,  act directly and/or indirectly in the interest of one another in employing persons to work at the Minooka, Illinois warehouse facility of World Class Distribution.

12.     Defendant, World Class Distribution, supervisors and managers are present when employees of HR Metrics work at the World Class Distributrion warehouse facility in Minooka, Illinois.

13.     Defendant, World Class Distribution, supervisors and managers provide directions on the scheduling and performance of work, train, supervise, instruct and dictate the overtime work of HR Metrics employees during the workday at the warehouse facility of Defendant, World Class Distribution, in Minooka, Illinois.

14.     At the Minooka, Illinois warehouse facility of World Class Distribution, employees of HR Metrics utilize the equipment and supplies of World Class Distribution to perform their job duties.

15.     Employees of HR Metrics work side-by-side at Defendant, World Class Distribution's, facility in Minooka, Illinois with other persons employed directly by World Class Distribution.

16.     During the course of their employment, employees of HR Metrics interact with supervisory personnel of both HR Metrics and World Class Distribution in connection with the assignment of and the performance of daily job duties.

17.     Defendant, World Class Distribution, exercises control over the terms of employment

3

of temporary employees such that Defendants, World Class Distribution and HR Metrics, share or co-determine matters governing the essential terms and conditions of the employment of such temporary employees, including decisions such as the continued performance of work by those temporary employees at World Class Distribution's Minooka, Illinois warehouse facility.

18.     The foregoing factors reflect that a full-time employee of HR Metrics working as a contract employee at the Minooka, Illinois warehouse facility of World Class Distribution is a joint employee of both HR Metrics and World Class Distribution, pursuant to the guidelines of EEOC Notice Number 915.002, dated December 3, 1997, Subject: Enforcement Guidance: Application of EEOC Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms.

## COUNT I - 42 U.S.C. § 1981 - RACIAL HARASSMENT

19.     Paragraphs one (1) through eighteen (18) are incorporated by reference as if fully set out herein.

20.     Plaintiff, who is African-American, began working for Defendants as an Inventory Clerk in June of 2016.  Plaintiff currently works as a Dry Cage Attendant for Defendants.

21.     Throughout  her employment relationship with Defendants, Plaintiff has performed to Defendants' reasonable satisfaction, and any assertion to the contrary is pretextual.

22.     Caucasian coworkers and supervisors have subjected and continue to subject Plaintiff to a course of hostile, abusive, and harassing conduct because of Plaintiff's race, African-American. Such conduct includes, but is not limited to:

(a)     Caucasian coworkers referring to African-American employees as "nigger;"

(b)     Caucasian coworkers referring to African-American females as "black bitches;"

4

(c)     Flagrantly hanging a noose from the drawer of a file cabinet in plain view;

(d)     Caucasian employees gesture with their hand to represent that they are shooting at African-Americans; and

(e)     Hispanic employees refusing to work with African-American coworkers.

23.     On March 13, 2017, Plaintiff was working second shift in the Dry Cage with Brent Hyde, an African-American co-worker when they noticed a noose ominously hanging from a file cabinet near Plaintiff's work area.

24.     Upon seeing the noose, which symbolizes the lynching of African-Americans, Plaintiff feared for her life and safety.

25.     Accordingly, Plaintiff took a photograph of the prominently displayed noose with her cell phone as the noose hung from the handle of the file cabinet drawer.

26.     Plaintiff has not received any training from Defendants, World Class Distribution and HR Metrics, regarding racial harassment or Defendants' procedures for employees complaints of harassment.

27.     Defendant HR Metrics failed to provide any information either in writing or orally to address racial harassment in the workplace. Nonetheless, Plaintiff promptly reported to the on-site representatives for Defendants, HR Metrics and World Class Distribution, that there was a noose hanging on the file cabinet in the Dry Cage. Neither of the on-site representatives were African-American.

28.     Upon seeing the photograph of the noose hanging from the file cabinet drawer in the Dry Cage, both of the on-site representatives for Defendants, HR Metrics and World Class Distribution, simply laughed.

29.     Defendants, World Class Distribution and HR Metrics, failed to take any action to ameliorate the hostile work environment and racial harassment Plaintiff was forced to endure.

30.     Rather, in response to Plaintiff's complaints, the on-site representatives for Defendants, HR Metrics and World Class Distribution, instructed Plaintiff to return to work in the Dry Cage.

31.     While discussing the noose incident with a coworker at Defendant, World Class Distribution's, warehouse facility in Minooka, Illinois, the coworker inquired who might have hung the noose on the file cabinet located in the Dry Cage.

32.     Plaintiff indicated to her coworker that she thought it was Andre Hughes from first shift who hung the noose on the file cabinet in the Dry Cage, as Hughes is the only Caucasian employee to work in the Dry Cage.

33.     The on-site representative for Defendant HR Metrics, who heard Plaintiff's statement, immediately reprimanded Plaintiff for making what the on-site representative perceived to be a racial allegation.

34.     Thereafter, Plaintiff was visibly distressed and complained to Gerald Smith, the Manager of Defendant, World Class Distribution's, Minooka, Illinois warehouse facility and presented him with the noose.

35.     Defendant World Class Distribution Manager, Gerald Smith, saw that Plaintiff was visibly distressed and told Plaintiff to calm down.

36.     Thereafter, a representative from Defendant, World Class Distribution's, Human Resources Department spoke with Plaintiff.   Again, Plaintiff showed the Human Resources representative for Defendant, World Class Distribution, the photograph of the noose hanging in the

Dry Cage.

37.     The Human Resources representative for Defendant, World Class Distribution, merely advised Plaintiff to calm down.

38.     Subsequently, on March 14, 2017, Defendants' employee, Junious Hagger, informed Plaintiff that he saw Andre Hughes playing with the same piece of rope and that Hughes was making a noose with the piece of rope.

39.     On March 18, 2017, the Manager for Defendant, World Class Distribution, Mike Franks, indicated to Plaintiff that he did not want to lose Andre Hughes as an employee.

40.     Franks, the Manager for Defendant, World Class Distribution, stated to Plaintiff that he did not believe Andre Hughes is a racist and dismissed her complaint of racial harassment.

41.     Andre Hughes has a tattoo of a spider web on his elbow.

42.     A tattoo of a spider web on an elbow is a symbol of being a white supremacist.

43.     Andre Hughes subsequently sent a text message to Victor Edmond, a coworker at Defendant, World Class Distribution's, warehouse in which Hughes admitted to making and hanging the noose up in the Dry Cage.

44.     Defendants, World Class Distribution and HR Metrics, failed to conduct an investigation into Plaintiff's complaints.

45.     No disciplinary action was taken by Defendants, World Class Distribution and HR Metrics, against Andre Hughes for his fashioning a noose out of a piece of rope and hanging the noose on a the drawer of a file cabinet in a blatant display of racial hostility.

46.     The noose, ominously hung in close proximity to Plaintiff's work station, created an unequivocal threat of physical violence, which made Plaintiff fear for her life and safety.

47.     As evidence of the highly charged hostile work environment Plaintiff is forced to endure by Defendants, African-American coworkers at Defendant, World Class Distribution's, warehouse facility in Minooka, Illinois are referred to as:

(a)     "nigger;" and

(b)     "black bitches."

48.     Beginning on March 13, 2017, Plaintiff has reported her coworkers' abusive and hostile treatment through all available channels, including complaining to the warehouse manager, her supervisor, on-site representatives for Defendants, World Class Distribution and HR Metrics, and human resources.  However, Defendants have not taken any action to rectify the racial hostility which Plaintiff continues to endure.

49.     Plaintiff's supervisors have witnessed and are fully aware of the racial harassment that Plaintiff endured.

50.     As a result of Defendants' failure to address the rampant racial harassment at the Minooka warehouse facility, Plaintiff continues to suffer to the present day.

51.     On information and belief, Defendants have engaged in a pattern and practice of discriminating against African-American employees by allowing Caucasian and other non-African-American employees to participate in a racially hostile work environment against African-American employees.

52.     As a result of the pervasive and inappropriate conduct of Plaintiff's coworkers and supervisors, Plaintiff has suffered emotional harm.

53.     The aforementioned acts and omissions of Defendants constitute intentional discrimination against Plaintiff on the basis of her race, African-American, by subjecting her to a

8

racially hostile work environment, and deprived Plaintiff of the enjoyment of all benefits, privileges, terms, and conditions of her employment relationship in violation of 42 U.S.C. § 1981.

54.     As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendants, Plaintiff suffered damages, including but not limited to, emotional harm and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Lauren Baker, prays for judgment against Defendants and respectfully requests that this Court:

A.     Declare the conduct of Defendants to violate the rights guaranteed to Lauren Baker under appropriate Federal Law;

B.     Grant a permanent injunction restraining Defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of race;

C.     Order Defendants to make whole Lauren Baker by providing the affirmative relief necessary to eradicate the effects of Defendants' unlawful practices;

D.     Order Defendants to pay lost, foregone, and future wages to Lauren Baker;

E.     Grant Lauren Baker actual, consequential, compensatory, punitive and any other damages the Court may deem appropriate against Defendants;

F.     Grant Lauren Baker her attorney fees, costs, disbursements; and

G.     Grant Lauren Baker such further relief as the Court deems necessary and proper in the public interest.

9

## JURY TRIAL DEMAND

55.     Plaintiff requests a jury trial on all issues of fact and law raised by the allegations

in this complaint.


Respectfully Submitted,
LAUREN BAKER, Plaintiff

By: s/Lisa Kane_____
        Lisa Kane, Attorney for Plaintiff

Lisa Kane & Associates
Attorney for Plaintiff
141 West Jackson Boulevard, Suite 3620
Chicago, Illinois 60604
(312) 606-0383
Attorney Code No. 06203093
lisakane@sbcglobal.net

10